# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

SCOTT KELLOGG,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

    Defendant.

Case No. 10-CV-752-FHM

## OPINION AND ORDER

Plaintiff, Scott Kellogg, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept

---

[1] Plaintiff's July 26, 2007, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Deborah L. Rose was held February 04, 2009. By decision dated March 24, 2009, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on September 24, 2010. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 37 years old on the date of alleged onset of disability and 41 on the date of the decision. He has a ninth grade education and formerly worked as cashier, maintenance mechanic's helper, machine operator, apartment maintenance man, wire puller, oven attendant, construction worker, and day laborer. He claims to have been unable to work since February 28, 2005, as a result of degenerative disc disease, recurrent infections, depression, anxiety, and opiate addiction.

## The ALJ's Decision

The ALJ determined that Plaintiff retains the residual functional capacity (RFC) to perform a wide range of light work as defined in 20 C.F.R. § §0404.1567(b), 416.967(b) and can do unskilled work that involves no more than occasional stooping and occasional interaction with the public. [Dkt. 10-2, p. 19]. Based on the testimony of the vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is

disabled. See *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

**Plaintiff's Allegations**

Plaintiff asserts that the Commissioner's decision should be reversed because: 1) the ALJ failed to give controlling weight to the treating physician, Dr. Knight; 2) the reasons given by the ALJ to discredit him are not supported by the record; 3) the hypothetical questioning of the vocational expert failed to include all of Plaintiff's limitations; 4) the ALJ's findings concerning Plaintiff's mental limitations are not supported by substantial evidence; and 5) the ALJ erroneously relied on the Medical-Vocational Rules (Grids) to deny the claim.[2]

**Analysis**

Treating Physician

An ALJ is required to give controlling weight to a treating physician's opinion if the opinion is both: (1) well supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) consistent with other substantial evidence in the record. *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004). If the ALJ rejects the opinion completely, he must give specific legitimate reasons for doing so. *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996), *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

In this case Dr. Joseph Knight produced a medical source statement dated June 23, 2008, in which he opined that Plaintiff could sit for just 15 minutes before needing to walk.

---

[2] The ALJ did not conclusively rely on the Grids to deny Plaintiff's claim for benefits as clearly indicated by the ALJ's decision and by Plaintiff's arguments concerning the ALJ's questioning of the vocational expert. Since there is no support for Plaintiff's contention concerning the Grids, it is not addressed in this Order.

According to Dr. Knight, during an 8-hour workday Plaintiff could sit for a total of one hour and could stand and walk for a total of one hour. Further, according to Dr. Knight, Plaintiff would need to take breaks at two hour intervals. [Dkt. 10-14, pp. 25-30]. The ALJ stated he gave little or no weight to Dr. Knight's medical opinion for the following reasons:

> There is no evidence to support its extreme limitations, e.g., less than an hour of sitting during an 8-hour workday. Mr. Kellogg's physical examination at Laureate in November 2006 showed that his back had good range of motion. There was no swelling or atrophy of muscles and he showed good muscle strength in his upper and lower extremities. Nothing in that examination or any other record remotely approaches the limitations that Dr. Knight assigned the claimant. It is noteworthy that Dr. Knight's primary function for the claimant is to direct and monitor his pain management and to treat the claimant's anxiety and panic attacks. There is no indication that Dr. Knight gives the claimant regular physical testing or even regular physical examinations.

[Dkt. 10-2, p. 22].

Plaintiff argues that the ALJ erred in rejecting Dr. Knight's opinion. According to Plaintiff, "Dr. Knight surely relied upon Kellogg's extensive records which speak for themselves, showing continuing and consistent problems and complaints well-documented by objective tests and physical findings covering treatment since 2000." [Dkt. 12, p. 4]. Plaintiff did not point to anything in the record to support that statement.

Plaintiff also asserts that if the ALJ believed Dr. Knight's opinions were unsupported by the evidence, the ALJ should have requested additional information from Dr. Knight, or ordered a consultative examination. The court rejects Plaintiff's assertion that the ALJ was required to order a consultative examination before rejecting Dr. Knight's opinion. The ALJ rejected Dr. Knight's opinion because the limitations contained in that opinion were not supported by the medical record, which is fairly extensive. Under 20 C.F.R. 404.1512(e),

4

"[w]hen the evidence [the agency] receive[s] from [a claimant's] treating physician or psychologist or other medical source is inadequate for [the agency] to determine whether [the claimant is] disabled, [the agency] will need additional information to reach a determination or a decision." Here, there was no need to further develop the record because sufficient information existed for the ALJ to make the disability determination. For the same reason, Plaintiff's argument that the ALJ should have requested additional information from Dr. Knight is rejected.

Plaintiff submitted additional records to the Appeals Council, which Plaintiff states show physical examination and counseling was performed by Dr. Knight. The evidence Plaintiff submitted to the Appeals Council was not before the ALJ. The Tenth Circuit has ruled that "new evidence [submitted to the Appeals Council] becomes part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence." *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Accordingly, even though the Court may not reweigh the evidence or substitute its judgment for that of the Commissioner, *O'Dell* requires the Court to review the new evidence to determine whether, even considering this new evidence, the ALJ's decision is supported by substantial evidence.

The court has reviewed the entire record, including the evidence supplied to the Appeals Council, and finds that the ALJ gave specific reasons for rejecting Dr. Knight's opinion. Further, the ALJ's reasons are supported by substantial evidence. In addition to the November 2006 record referenced by the ALJ which shows that Plaintiff had good range of motion in his back, no swelling or atrophy of the muscles, and good muscle strength in his upper and lower extremities, [Dkt. 10-14, pp. 100-01], other records support

5

the ALJ's decision. The record contains a June 2007 examination which had normal neurologic findings and grossly normal motor strength. [Dkt. 10-15, p.]. A May 2008 examination showed good motor tone. [Dkt. 10-15, p. 40]. In June 2008, examination revealed tenderness along the trapezius musculature and bilateral back, but no neurological deficits. [Dkt. 10-15, p. 52]. In September 2008 the examining physician reported strength 5/5 bilaterally at the upper and lower extremities and there was no evidence of straight leg raise pain. [Dkt. 10-15, p. 54].

Consideration of the evidence submitted to the Appeals Council is limited to that evidence which is new and material, 20 C.F.R. § 404.970(b), and which relates to the period on or before the date of the ALJ's decision. The ALJ's decision in this case is dated March 24, 2009. The medical records Plaintiff submitted to the Appeals Council consist of 15 pages of records from Dr. Knight dated September 18, 2008 through March 13, 2009, [Dkt. 10-15, pp. 70-84], and 14 pages from Saint Francis Hospital dated July 7, 2009 through August 22, 2009. [Dkt. 10-15, pp. 86-98].

The Saint Francis Hospital records were generated after the date of the ALJ's decision and address a narcotics overdose on July 7, 2009, [Dkt. 10-15, pp. 86-88, and a physical assault which occurred on August 20, 2009, [Dkt. 10-15, pp. 89-98]. The Saint Francis Hospital records are outside the relevant time period, do not relate to the relevant time frame, and therefore do not provide any basis for remand.

Dr. Knight's records contain a note dated April 26, 2008, which states "Mr. Kellogg is unable to work at present due to disability related to his severe low back pain [secondary] to his lumbar spine disease." [Dkt. 10-15, p. 70]. On September 19, 2008, Dr. Knight reports, " He is doing well. No complaints. Pain is adequately controlled." [Dkt. 10-

6

15, p. 71]. On October 8, 2008 Dr. Knight wrote pain is well-controlled. *Id*. at 73. On December 17, 2008, Dr. Knight reported "having a great deal of pain." *Id*. at 77. On January 1, 2009, Dr. Knight recorded that pain is well-controlled. *Id*. at 79. February 16, 2009, Dr. Knight stated Plaintiff reported being in pain and that he fell on the ice last month. *Id*. at 81. On March 13, 2009, Dr. Knight's note contains the notation: "pain is well controlled." [Dkt. 10-15, p. 81]. These records do not undermine the ALJ's rejection of Dr. Knight's opinion. These records show sporadic complains of pain and that Plaintiff's pain is generally well-controlled. The records do not reflect any testing or examination results that would support the severe restrictions Dr. Knight reported. Nor do the records address Plaintiff's ability to sit, stand, or walk. The court finds that consideration of the records submitted to the Appeals Council does not require remand.

The ALJ stated that the RFC finding is supported by the Disability Determination Services' (DDS) mental and physical RFC assessments. [Dkt. 10-2, p. 22]. Plaintiff argues that the ALJ erred in relying on these assessments because medical records from Drs. Simmons, Hawkins, and Covington were not in the record at the time of the DDS review, nor were the MRI or the EMG reports. [Dkt. 12, p. 6].

The narrative portion of the physical RFC mentions that the records show that Plaintiff has a chronic back condition: "[h]e does have cervical stenosis with herniated discs in the cervical and lumbar spine. He does exhibit pain behaviors." [Dkt. 10-11, p. 30]. Plaintiff has not pointed out what in the records of Drs. Simons, Hawkins, and Covington contradicts the RFC.

7

Dr. Covington's record is a one-page "Initial Office Visit Evaluation" dated March 5, 1997, long before the alleged onset date. Dr. Covington states he suspects a large central disc protrusion at C5-6 with spinal cord compression. Dr. Covington says he recommends surgery if his suspicion is confirmed by MRI. [Dkt. 10-13, p. 33]. Dr. Simmons' records, [Dkt. 10-13, pp. 84-88], are dated in February 2005, about the time of Plaintiff's alleged onset of disability. These records contain notes that state Dr. Simmons suspects a herniated cervical disk, *Id*. at 87, and that Plaintiff may not work at this time, *Id*. at 84, 86. The records contain a workers compensation follow-up note that reflects an MRI demonstrates a large herniated disk at C6-C7 causing encroachment on the C7 nerve root. *Id*. at 85. Dr. Simmons expresses concern over the amount of pain medication Plaintiff is taking and states that he will try physical therapy and a cervical collar while awaiting an appointment for surgery. *Id*. There are no physical therapy notes or further follow-up records generated by Dr. Simmons.

The records of Dr. Hawkins reveal that he performed two independent medical evaluations for workers compensation purposes related to a reported injury on January 27, 2005. [Dkt. 10-13, p. 90]. Dr. Hawkins stated radiological studies show a significant abnormality at C6-C7 and a small abnormality at L4-L5 that could produce pain radiating into the legs and is the likely cause of current symptoms and complaints. [Dkt. 10-13, p. 91]. Dr. Hawkins found Plaintiff to have significant findings in his left arm and low back problems "much less in intensity and without specific neurologic findings. Treatment may be necessary with the cervical spine if the degree of pathology is significant which I suspect it may be from the examination of the left arm and radicular symptoms in the left arm in

8

particular." [Dkt. 10-13, p. 95]. Dr. Hawkins expressed difficulty attributing Plaintiff's problems to the January 27, 2005 work-related injury:

> I have been asked to evaluate this patient which I have reviewed extensive records and examined the patient as well as spent considerable time evaluating the patient, asking him questions about his history. I simply have extreme difficulty as the patient absolutely denies all of the information in the records which are present which has his name on them. The patient tells me that this is very likely his twin brother, who is incarcerated currently for impersonating the actual patient. There are many things which do not fit. I am an orthopedic physician and cannot determine if this is the patient or his brother. I can state however that these records a patient with significant problems with drug, alcohol, and with neck pain. If this is the actual patient who has denied all of these facts, then the case should be clear cut fraudulent representation at least in my opinion, but he has strictly denied all of the facts and tells me he never uses alcohol and has had no previous problems whatsoever with that, with depression or any of the problems with his neck other than one strain of his neck producing some pain on the right side.
>
> \* \* \*
>
> Simply stated, I have no way of knowing if the patient's statements that this is his twin brother are true. If this is actually the patient then I think all of his problems are pre-existing. Specific recommendations would require me to evaluate the scan and then determine whether additional studies would be necessary, specifically surgery. An MRI scan will be necessary to make that determination also in regard to the lumbar spine.

[Dkt. 10-13, pp. 95-96]. The record does not contain subsequent records from Dr. Hawkins that resolve the unanswered questions expressed in the quoted material.[3]

The DDS RFC evaluation upon which the ALJ relied, acknowledges Plaintiff's chronic back condition, specifically herniated discs in the cervical and lumbar spine. [Dkt.

---

[3] Dr. Covington's March 5, 1997, records which have been submitted as belonging to Plaintiff, indicate cervical spine problems that pre-date Dr. Hawkins' review. [Dkt. 10-13, p. 33].

10-11, p. 30]. The RFC takes these conditions into account in limiting Plaintiff to only occasionally lifting 20 pounds and frequently lifting only 10 pounds. Further, the ALJ specifically referred to Dr. Hawkins' report in the decision. Plaintiff has not demonstrated that the records of Drs. Covington, Simmons, and Hawkins contain limitations that exceed this RFC.

### Credibility Determination

The Commissioner is entitled to examine the medical record and to evaluate a claimant's credibility in determining whether the claimant suffers from disabling pain. *Brown v. Bowen*, 801 F.2d 361, 363 (10th Cir. 1986). Credibility determinations made by an ALJ are generally treated as binding upon review. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990). According to Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996), which governs an ALJ's evaluation of a claimant's description of symptoms, the evaluation must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations. Id. at *4. It is well-established that an ALJ's findings with respect to a claimant's credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995)(quotation omitted).

The ALJ said the following about Plaintiff's credibility:

> Mr. Kellogg was not a credible witness. He spoke of wanting to have himself cured so that he could resume working, but he had directly refused to discuss his opiate dependence when the subject was raised at Laureate Psychiatric. He almost invariably runs out of his pain medications early, often saying the drugs were stolen by family members. There is no evidence of such theft. Mr. Kellogg's denial of participation in alcohol detoxification involved some story about a twin brother,

> but did not include a rationale of why his presumed twin would be pretending to be him. Another inconsistency is the absence of even any discussion in the record of the possibility of cervical or lumbar surgery. It would seem that someone with the claimant's insistent complaints of back and neck pain would at least bring up the subject of surgery with his treating physicians or that some treating source would recommend surgery.

[Dkt. 10-2, p. 22].

Plaintiff argues that the ALJ discredited his credibility based on the erroneous statement that there was no reference in the record to surgery by any treating physician. Plaintiff points out that the records of Dr. Covington and Dr. Simmons both contain a recommendation for surgery. The court does not view the ALJ's comment about surgery as being contradicted by these references.

Doctors Covington and Simmons mention surgery, but their comments fall short of recommending it. Dr. Covington's one-page record dated in 1997, before the alleged onset date, states that an MRI is needed to confirm his suspicions about the nature and severity of Plaintiff's problem and states that he would recommend surgery if it did. [Dkt. 10-13, p. 33]. Dr. Simmons states that physical therapy and a cervical collar will be tried while awaiting an appointment for surgery. [Dkt. 10-13, p. 85]. While this note seems to suggest that surgery is being scheduled, the later records do not confirm that this is the case.

The ALJ essentially said that she would expect someone having the degree disability Plaintiff testified to having would explore the possibility of surgery with his physicians or that the records would contain recommendations or discussions by the

physicians of the topic of surgery.[4] The absence of such inquiries or recommendations undercuts Plaintiff's credibility. Furthermore, the ALJ's credibility analysis did not rely solely on the lack of a recommendation for surgery as the basis to discount Plaintiff's credibility. The other reasons listed by the ALJ for finding that Plaintiff was not credible are supported by the record and are not contested by Plaintiff.

The rest of Plaintiff's assertions about the ALJ's credibility analysis are instances where Plaintiff essentially disagrees with the weight the ALJ gave to the factors she considered. However, the court may not reweigh the evidence on appeal. The ALJ set forth the specific evidence she relied upon in evaluating Plaintiff's subjective allegations and her determination on this matter is supported by substantial evidence in the record.

Hypothetical Questioning

Plaintiff claims that the hypothetical question posed to the vocational expert was incomplete in that it failed to include all of his limitations. *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir. 1991) provides that "testimony elicited by hypothetical questions that do not relate with precision all the claimants' impairments cannot constitute substantial evidence to support the Commissioner's] decision." However, in posing a hypothetical question, an ALJ need only set forth those physical and mental impairments which are accepted as true by the ALJ. See *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990).

---

[4] The ALJ's credibility determinations "warrant particular deference" because "[t]he ALJ enjoys an institutional advantage in making the type of determination at issue here. Not only does an ALJ see far more Social Security cases than do appellate judges, he or she is uniquely able to observe the demeanor ... of the claimant in a direct and unmediated fashion." *White v. Barnhart,* 287 F.3d 903, 910 (10th Cir.2001). Seeing a greater number of cases includes experience in reviewing medical records and having familiarity with the type of language physicians employ to describe the severity of medical conditions and the treatments recommended. Thus, the ALJ's expectation that a discussion of surgery would accompany the extreme limitations of being able to sit, stand or walk for more than 15 minutes at a time is not unreasonable.

Plaintiff complains that the ALJ did not take into account any impairment to his vision caused by congenital left strabismus,[5] a condition whereby the eyes do not line up and look in the same direction. However, aside from pointing out the existence of this condition, Plaintiff has not pointed to anything within the 928 page record where limitations related to Plaintiff's vision are addressed by medical care providers. In the decision the ALJ noted that on physical examination performed in November 2006, Plaintiff's gross vision and his visual fields were intact. [Dkt. 10-2, p. 20-21; 10-14, p. 101]. The report from a January 2007 examination reflects the same observation was made about Plaintiff's vision. [Dkt. 10-15, p. 11]. In addition, at several other points in the record the absence of eye problems was noted. [Dkt. 10-10, pp. 12, 19; 10-12, p. 34]. At other points Plaintiff denied having vision problems. [Dkt. 10-13, pp. 8, 18; 10-14, p. 100].

Plaintiff also argues that the ALJ failed to include any impairment to his hands and notes that [w]hen the hypothetical was modified to reflect impairment to the hands, all jobs were eliminated. At the hearing Plaintiff's attorney asked the vocational expert if all jobs would be eliminated if one were restricted to occasional handling with both hands and fingering rarely to none with the left hand. [Dkt. 10-2, p. 57]. The vocational expert answered that such restrictions would eliminate all jobs. *Id.* Plaintiff does not point the court to any evidence in the record that would support such limitations. Only Dr. Knight's opinion, which the ALJ rejected, contains such limitations.

The court finds that the restrictions expressed by the ALJ in the hypothetical posed to the vocational expert and upon which the disability determination is based, are

---

[5] In the decision, the ALJ incorrectly listed Plaintiff's eye problem as astigmatism. [Dkt. 10-2, p. 20]. At the hearing Plaintiff referred to the problem as "nystagmus." [Dkt. 10-2, p. 42].

supported by substantial evidence. Accordingly, the Court finds that the ALJ's hypothetical questions to the vocational expert and her reliance upon the vocational expert's testimony in the decision were proper and in accordance with established legal standards.

## Evaluation of Mental Impairments

Plaintiff asserts that the ALJ did not rely on "adequate evidence" regarding his mental impairments. [Dkt. 12, p. 12]. Plaintiff states that the ALJ erred in relying on the evaluation of the DDS reviewing physicians instead of obtaining a mental consultative examination. Although the ALJ is not bound by the findings made by State agency medical or psychological consultants, the regulations instruct that these consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation" whose findings must be considered as opinion evidence. 20 C.F.R. § 404.1527(f)(2)(i); 20 C.F.R. § 416.927(f)(2)(i). Plaintiff has not provided specific information to demonstrate that the findings by the DDS reviewers were inaccurate, nor has Plaintiff demonstrated the need for a mental consultative examination.

"[T]he ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability <u>and</u> the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (emphasis supplied). That is, consultative examinations are necessary when the medical evidence in the record is inconclusive or incomplete. *Thomson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 2008). The record about Plaintiff's mental health complaints is extensive and Plaintiff has presented nothing to suggest that a consultative examination would have been of assistance in resolving the issue of disability. Furthermore, Plaintiff was

14

represented by counsel at the hearing and counsel made no suggestion at the hearing that a consultative examination was in order. Although the Commissioner has the duty to develop an adequate record relevant to the issues raised, an ALJ is normally entitled to rely on the claimant's counsel to structure and present the case. *Hawkins* 113 F.3d at 1164, *see also Maes v. Astrue*, 522 F.2d 1093, 1097 (10th Cir. 2008)(although the ALJ has the duty to develop the record, a claimant through counsel may not state that the case is ready for decision and later fault the ALJ for not performing a more exhaustive investigation).

Plaintiff also argues that the ALJ should have relied on the Global Assessment of Functioning (GAF)[6] ratings in the record rather than the mental RFC produced by the DDS reviewing psychology specialists. According to Plaintiff, the low GAF scores should have lead to a finding of disability or "at the very least severe restrictions on his ability to function in the workplace which should have been further addressed." [Dkt. 12, p. 9]. Through a review of the medical record, the reviewing psychologist, Cynthia Kamschaefer, PsyD, found that Plaintiff was markedly limited in this ability to understand, remember, and carry out detailed instructions, but that he had the ability to understand, remember, and carry out very short and simple instructions. [Dkt. 10-11, p. 25]. She also found Plaintiff had a marked limitation on the ability to interact appropriately with the general public. [Dkt. 10-11, p. 26-27]. The ALJ's RFC limitation of Plaintiff to the performance of unskilled work that involves no more than occasional interaction with the public took into account these

---

[6] The GAF score represents Axis V of the Multiaxial Assessment system. *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* 25-30 (4th Ed. 1994). The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *See id.* at 25. The GAF rates the client's "psychological, social, and occupational functioning." *Id.* at 30.

findings. Plaintiff states that his GAF scores should have lead to severe restrictions on the ability to work, but Plaintiff does not state what those "severe restrictions" should have been or where in the record more severe restrictions are justified. It is Plaintiff's duty on appeal to support his arguments with references to the record and to tie relevant facts to his legal contentions. The court will not "sift through" the record to find support for the claimant's arguments. *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir.1992), *United States v. Rodriguiez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997)(appellants have the burden of tying the relevant facts to their legal contentions and must provide specific reference to the record to carry the burden of proving error). Plaintiff has not demonstrated that the ALJ erred in her assessment of Plaintiff's mental RFC.

## Conclusion

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The Court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED

SO ORDERED this 16th day of February, 2012.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE